<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **DESIREE KONATE**, <br><br> Plaintiff, <br><br> v. <br><br> **ACTALENT, INC.,** *et al.*, <br><br> Defendants. | Civil Action No. 23-4210 (ZNQ) (JBD) <br><br> **OPINION** |

<u>**QURAISHI, District Judge**</u>

     **THIS MATTER** comes before the Court upon two motions to dismiss Plaintiff Desiree Konate's Second Amended Complaint ("SAC", ECF No. 15.) The first Motion to Dismiss was filed by Defendant Actalent, Inc. ("Actalent"), (ECF No. 33), accompanied by a Memorandum in Support, ("Actalent Moving Br.", ECF No. 33-1). Defendants Distek, Inc., Ed Burton, Gail Rayner, and Ryan Vrabel also seek to dismiss the claims against them, (ECF No. 34) and filed a Brief in Support of their motion, ("Distek Moving Br.", ECF No. 34-1).[1] Plaintiff opposes both motions (ECF No. 35) and all Defendants filed a Reply, (ECF Nos. 36 and 37).

     The Court has carefully considered the parties' submissions and decides the Motions without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1.

---

[1] Megan Albright—an Actalent employee alleged to have also supervised Plaintiff (SAC ¶¶3–4)—is also named as a defendant in the Complaint, but no proof of service of the summons and Complaint for her appears on the docket. She has not appeared in this matter nor has Actalent sought relief on her behalf in its Motion to Dismiss. Plaintiff should resolve Ms. Albright's status as part of any effort to further amend her SAC. For the same purpose, the Court directs Plaintiff's attention to paragraph 25 of the SAC, which appears to erroneously identify a "Charing Party" among the individuals involved in Plaintiff's placement.

1

For the reasons set forth below, the Court will **GRANT** Defendant Actalent's Motion and **GRANT IN PART AND DENY IN PART** Defendants Distek, Burton, Raynor, and Vrabel's Motion.

I. <u>**BACKGROUND AND PROCEDURAL HISTORY**</u>

This matter arises out of Plaintiff's termination by her former employer and involves allegations of employment discrimination and retaliation based on pregnancy.

Plaintiff became pregnant in August 2022. (SAC ¶31.) Plaintiff alleges that in January 2023, Defendant Actalent, a recruiting agency, and one of its recruiters, Defendant Meghan Albright, connected Plaintiff with Defendant Distek, Inc. ("Distek") for employment. (*Id*. ¶¶24–26.) Following both virtual and in-person interviews, Albright facilitated an employment contract between Actalent, Distek, and Plaintiff. (*Id*. ¶¶25, 34.) On February 6, 2023, when she was around six months pregnant, Plaintiff began working at Distek as a validation specialist. (*Id*. ¶¶27–28, 30.) Defendant Ed Burton was Distek's Department Manager and Plaintiff's supervisor. (*Id*. ¶¶9–10.) Plaintiff claims that at the start of her employment, her pregnancy was just beginning to show. (*Id*. ¶¶30, 36.)

On February 21, 2023, Plaintiff, in a common area at work, told coworker Carlye McDonald that she was pregnant. (*Id*. ¶37.) On March 2, 2023, Plaintiff left work early to attend a pre-natal doctor's appointment which she says was approved by Burton. (*Id*. ¶¶46–48.) On March 13, 2023, Albright informed Plaintiff that she was being terminated due to "poor performance" and "calling out of work too frequently." (*Id*. ¶43.) Plaintiff contends that, at the time she was fired, her pregnancy was apparent to any observer. (*Id*. ¶¶42, 44.)

Following her termination, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). (*Id*. ¶21.) Plaintiff then timely filed suit in this Court following the receipt of her right-to-sue letter. (*Id*. ¶¶22–23.)

In response to Plaintiff's original Complaint, Defendants filed Motions to Dismiss (ECF No. 14) and to Strike (ECF No. 16). After a conference with the Honorable J. Brendan Day, U.S.M.J., the parties agreed to terminate these motions in favor of permitting Plaintiff to withdraw her Amended Complaint and file the SAC. On May 16, 2024, Plaintiff filed her SAC. It asserts five claims against Defendants Actalent and Distek: (1) pregnancy discrimination, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2 ("Title VII") (Count I), (*id*. ¶¶64–75); (2) sex discrimination, in violation of Title VII (Count II), (*id*. ¶¶76–87); (3) retaliation, in violation of Title VII, § 2000e-3(a) (Count III), (*id*. ¶¶88–101); (4) pregnancy/sex discrimination, in violation of the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. 10:5-1, and the New Jersey Pregnant Workers' Fairness Act ("NJPWFA"), N.J.S.A. 10:5-3.1 (Count IV), (*id*. ¶¶102–111); and (5) retaliation, in violation of NJLAD and NJPWFA (Count V), (*id*. ¶¶112–118). Plaintiff also brought one claim against Defendants Albright, Burton, Raynor, and Vrable for aiding and abetting Actalent's and Distek's alleged discrimination and retaliation against Plaintiff (Count VI). (*Id*. ¶¶119–125).

## II.   LEGAL STANDARD

A court may dismiss a claim under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted with the moving party "bear[ing] the burden of showing that no claim has been presented," *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)). When considering a motion under 12(b)(6), the court must accept as true all the plaintiff's well-pled factual allegations and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). The court may, however, ignore legal conclusions or factually unsupported accusations that merely state the defendant

unlawfully harmed me. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Thus, to survive a motion to dismiss, the complaint must contain sufficient factual allegations to raise a plaintiff's right to relief above the speculative level, so that a claim "is plausible on its face." *Twombly,* 550 U.S. at 570. A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663.

### III.  DISCUSSION

The SAC alleges that Defendants Actalent and Distek discriminated against Plaintiff based on both sex and pregnancy and that Gail Rayner, Ryan Vrabel, and Ed Burton ("Individual Defendants") aided and abetted the discriminatory conduct. In support of these claims, Plaintiff alleges that she was six-months pregnant when she began working at Distek, Distek knew that she was pregnant, and she was fired 11 days after leaving work early to attend a prenatal doctor's appointment. (SAC ¶¶40, 47).

####   A.  A PREGNANCY CLAIM UNDER TITLE VII (COUNT I) IS DUPLICATIVE OF A SEX DISCRIMINATION CLAIM UNDER TITLE VII (COUNT II)

As part of its Motion, Defendant Actalent first contends that Plaintiff's claim of pregnancy discrimination under Title VII (Count I) should be dismissed because it is duplicative of her claim of Title VII sex discrimination (Count II). (Actalent Moving Br. at 8.) The remaining Defendants similarly argue that Plaintiff fails to assert any facts that give rise to a plausible claim for sex discrimination that is distinct from her pregnancy discrimination claim. (Distek Moving Br. at 7–8.) For the reasons set forth below, the Court agrees that Plaintiff's pregnancy discrimination claim under Title VII (Count I) is duplicative of her sex discrimination claim under Title VII (Count II).

4

"Title VII prohibits employers from engaging in discrimination on the basis of race, color, religion, sex or national origin." *Atkinson v. LaFayette College*, 460 F.3d 447, 453–54 (3d Cir. 2006) (citing 42 U.S.C. § 2000e–2). The Pregnancy Discrimination Act ("PDA") amended Title VII to expand the definition of discrimination on the basis of sex to include discrimination "because of or on the basis of pregnancy, childbirth, or related medical conditions." *Doe v. C.A.R.S. Protection Plus, Inc.*, 527 F.3d 358, 363–64 (quoting 42 U.S.C. § 2000e(k)). Accordingly, the Third Circuit has explained that "the PDA makes clear that Title VII's prohibition against sex discrimination includes pregnancy discrimination." *Peifer v. Bd. of Probation & Parole*, 106 F.4th 270, 276 (3d Cir. 2024); *see also Ahern v. Eresearch Tech., Inc.*, 183 F. Supp. 3d 663, 669 (E.D. Pa. 2016).

Given that pregnancy discrimination is a form of sex discrimination under Title VII rather than an independent form of discrimination, the Court agrees with Defendants and concludes the proper vehicle for Plaintiff's allegation of pregnancy discrimination under Title VII is her claim for sex discrimination (Count II). The Court will therefore GRANT the portion of the Motions seeking to dismiss Plaintiff's pregnancy discrimination claim under Title VII (Count I). The dismissal will be with prejudice, as any attempt to amend the duplicative claim would be futile. *See Dudhi v. Temple Health Oaks Lung Ctr.*, Civ. No. 18-3514, 2019 WL 426145, at *3 (E.D. Pa. Feb. 4, 2019) (dismissing with prejudice a pregnancy discrimination claim under Title VII as duplicative of a sex discrimination claim under Title VII).

The Court now turns to the remaining claims, first against Defendant Distek, as well as Individual Defendants, and then against Actalent.

### B.   CLAIMS AGAINST DISTEK, GAIL RAYNER, RYAN VRABLE, AND ED BURTON

#### i.   Sex discrimination under Title VII (Count II) and NJLAD (Count IV)

Distek challenges the adequacy of Plaintiff's pleading against it for her claims of sex discrimination arising under Title VII and NJLAD (Counts II and IV). [2] Distek does not dispute that Plaintiff has sufficiently pled that (1) she was qualified for her employment and (2) she suffered an adverse employment action. (Distek Moving Br. at 11.) Instead, it argues that Plaintiff has not pled sufficient facts that show that it knew Plaintiff was pregnant or that her termination gives rise to an inference of unlawful discrimination. For the reasons set forth below, the Court disagrees.

Under Title VII, an employer cannot "discriminate against any individual with respect to h[er] compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). As set forth above, discrimination based on pregnancy is prohibited under Title VII as a subsection of the "because of sex" category. NJLAD, as modified by PWFA, however, takes a slightly different tack. It prohibits discrimination based on both "pregnancy, [and] sex." N.J. Stat. Ann. § 10:5-12(a).[3]

---

[2] Because the analyses for Title VII and NJLAD claims are the same, the Court will analyze the claims together. *See Cortes v. Univ. of Med. & Dentistry of N.J.*, 391 F. Supp. 2d 298, 311 (D.N.J. 2005) (explaining "[t]he analysis which is applied in Title VII claims is equally applicable to actions brought under other civil rights statutes, and thus the Title VII analysis applies to claims brought under the NJLAD as well." (internal citation omitted); *Teubert v. SRA International, Inc.*, 192 F. Supp. 3d 569, 574 (D.N.J. 2016) ("Analysis of a claim under the NJLAD follows that of a claim under Title VII.").

[3] In 2014, the New Jersey Legislature passed PWFA which amended existing sections of NJLAD to incorporate "pregnancy" as a protected characteristic. *Delanoy v. Twp. Of Ocean*, 246 A.3d 188, 193 (N.J. 2021) (citing N.J. Stat. Ann. § 10:5-12(a)-(c), (f), (h), (i), (k), (l), (m), and (o)). PWFA also added an entirely new section to the LAD, "which elaborates on an employer's obligations to a pregnant or breastfeeding employee." *Id.* (citing N.J. Stat. Ann. § 10:5-12(s)). The New Jersey Supreme Court has recognized three distinct theories under which a plaintiff may bring a pregnancy discrimination claim: (1) unequal or unfavorable treatment; (2) failure to accommodate; and (3) unlawful penalization. *Id.* at 197. Plaintiff has not specifically identified what type of harm she suffered. As best the Court can infer from the SAC, Plaintiff's allegations would seem to fall within the unequal or unfavorable treatment category. The prohibition against unfavorable treatment includes "discharging or forcing to retire . . . an individual based on pregnancy." *Id.* at 197–98.

To establish a prima facie case of discrimination based on pregnancy, a plaintiff must show: (1) the employee was pregnant, and the employer knew; (2) the employee was qualified for the job; (3) the employee suffered an adverse employment decision; and (4) there was a nexus between her pregnancy and the adverse employment decision that would allow a fact-finder to infer discrimination.[4] *Doe v. C.A.R.S. Prot. Plus, Inc.*, 527 F.3d 358, 366 (3d Cir. 2008).

Notably, to survive a motion to dismiss, a plaintiff "does not need to plead facts sufficient to establish a prima facie case of discrimination." *Buckley v. Power Windows & Sidings, Inc.*, Civ. No. 09-3162, 2010 WL 3981978, at *4 (D.N.J. Oct. 7, 2010) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002) (explaining that the requirements for establishing a prima facie case of employment discrimination under *McDonnell Douglas* is an evidentiary standard not required to survive a motion to dismiss)). Rather, the plaintiff need only plead facts sufficient to meet the standard of Federal Rule of Civil Procedure 8(a), "under which a pleading must give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Id.* at *4 (citing *Swierkiewicz*, 534 U.S. at 512.); *see also DiTommaso v. Medicines Co.*, 754 F. Supp. 2d 702, 705 (D.N.J. 2010) (in a reverse discrimination context, a plaintiff must meet *Twombly's* requirement that the facts alleged "raise the right to relief above a speculative level. The elements *of the prima facie* claim do not have to be proven, but merely must be plausible.") (citing *Thomas v. Independence Twp.*, 463 F.3d 285, 295 (3d Cir. 2006)).

In other words, a complaint's factual allegations "must be facially plausible and must give fair notice to the defendants of the basis for the claim." *Huggard v. Crown Bank,* No. CIV. 11-6194, 2012 WL 529548, at *4 (D.N.J. Feb. 17, 2012); *see also Barbosa v. Continuum Health*

---

[4] "There is no single prima facie case that applies to all employment discrimination claims. Instead, the elements of the prima facie case vary depending upon the particular cause of action." *Kirschling v. Atl. City Bd. of Educ.*, 10 F. Supp. 3d 587, 594 (D.N.J. 2014), *aff'd,* 604 F. App'x 153 (3d Cir. 2015).

*Partners Inc.,* 716 F. Supp. 2d 210, 215 (S.D.N.Y.2010) ("[r]econciling *Swierkiewicz, Twombly,* and *Iqbal,* a complaint need not establish a prima facie case of employment discrimination to survive a motion to dismiss; however, the claim must be facially plausible and must give fair notice to the defendants of the basis for the claim.").

Here, as to Distek, Plaintiff has sufficiently pled a cause of action for sex discrimination on the basis of pregnancy. First, the SAC sufficiently alleges that Plaintiff was almost six-months pregnant when she was hired. (SAC. ¶30.) At least one person in a supervisory role at Distek, Burton, knew that Plaintiff was pregnant because Plaintiff sought permission from Burton to leave work early for a prenatal doctor's appointment.[5] (*Id.* ¶¶46–48.) Plaintiff also plausibly alleges that, because she was approximately seven-months pregnant, her pregnancy was evident to an observer.

The SAC further demonstrates a nexus between Plaintiff's termination and her pregnancy based on temporal proximity.[6] Here, temporal proximity between Burton's (and by extension, Distek's) knowledge of Plaintiff's pregnancy and the adverse action establishes an inference because Plaintiff was fired on March 13, 2023, 11 days after attending her prenatal doctor's appointment on March 2, 2023.[7] (*Id.* ¶¶47, 49.) There is no mention in the SAC of a discussion between Distek's employees (or Actalent's recruiters) and Plaintiff about Plaintiff's work

---

[5] Plaintiff alleges that Ryan Vrabel, a design engineer, was present when Plaintiff asked Burton to leave work early. (*Id.* ¶¶ 8, 46.)
[6] As to the fourth element, circumstances giving rise to an inference of discrimination could include that "similarly situated, non-pregnant employees were treated in a better manner," or a "temporal proximity between the pregnancy and the adverse act." *Ahern*, 183 F. Supp. at 669.
[7] Defendant Actalent points out that Plaintiff alleges that she asked for permission to attend this appointment "in advance" (although Plaintiff does not specify when she asked Burton) and therefore more than 11 days could have passed between Burton's knowledge of the pregnancy and Plaintiff's termination. Viewing Plaintiff's allegation in the light most favorable to Plaintiff, even if Burton may have known more than 11 days before Plaintiff was fired, it is still sufficiently suggestive of causation given that, on the day of her appointment, Plaintiff had not even worked at Distek for a full month. *See id.* at 670 ("Where the actions span months, additional evidence is needed.") (citing *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 280 (3d Cir. 2000)).

performance or of any reprimand regarding Plaintiff's alleged absences from work which would support an alternative basis for terminating Plaintiff.

At this stage, "the issue is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims." *Swierkiewicz*, 534 U.S. at 511 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). Accordingly, taking the allegations in the SAC as true, Plaintiff has sufficiently pled a plausible claim of sex discrimination based on pregnancy under Title VII against Distek. *Golod v. Bank of America Corp.*, 403 Fed. App'x 699, 702 (3d Cir. 2010) ("Plaintiff has the burden of pleading sufficient factual matter that permits the reasonable inference that [she] was terminated . . . because of her . . . sex."). For the same reasons, the Court finds that Plaintiff has also sufficiently pled a plausible claim of pregnancy discrimination under NJLAD pursuant to the unequal or unfavorable treatment theory. [8]

The Court will therefore DENY the portion of the Motion seeking to dismiss Counts II and IV as to Distek.

### ii. Retaliation under Title VII (Count III) and NJLAD (Count V)

Distek further argues that Plaintiff's retaliation claims under Title VII and NJLAD (Counts III and V) should be dismissed because Plaintiff does not allege that she engaged in a protected activity. (Distek Moving Br. at 13.) Title VII makes it unlawful for an employer to retaliate against an employee who "opposed . . . an unlawful employment practice" or engaged in a protected activity. 42 U.S.C. § 2000e-3(a). NJLAD prohibits retaliation against an employee

---

[8] Plaintiff's claim under NJLAD is for both pregnancy and sex discrimination. (SAC ¶108.) Unlike Title VII, pregnancy discrimination under NJLAD is not prohibited as a subcategory of sex. Rather, pregnancy is its own protected characteristic. Plaintiff does not, however, allege any facts which would support a plausible claim for sex discrimination under NJLAD in that she simply provides labels and conclusions, "and a formulaic recitation of the elements." *Twombly*, 550 U.S. at 555. Because Plaintiff does not raise factual allegations relating to sex discrimination independent of pregnancy discrimination, the Court will consider Count IV as asserting pregnancy discrimination. *See Thompson v. Liberty Mutual Ins.*, Civ. No. 18-6092, 2021 WL 1712277, at * 4 n 7 (D.N.J. April 29, 2021) (concluding same).

because that employee "has opposed any practices or acts forbidden under [NJLAD] or because that person has filed a complaint, testified or assisted in any proceeding under [NJLAD]." N.J. Stat. Ann. § 10:5-12(d). To prevail on a retaliation claim, a plaintiff must show: (1) she engaged in a protected activity; (2) she suffered an adverse employment action either after or contemporaneous with the protected activity; and (3) there is a causal connection between the two events. *Moore v. City of Philadelphia*, 461 F.3d 331, 340–41 (3d Cir. 2006)) (Title VII); *Delli Santi v. CNA Ins. Cos.*, 88 F.3d 192, 198 (3d Cir. 1996) (NJLAD); *Rios v. Meadowlands Hosp. Med. Ctr.*, 463 A.3d 421, 425 (N.J. Sup. Court, App. Div. 2020) (NJLAD).

Here, the Court finds that Plaintiff has not sufficiently pled a retaliation claim under Title VII or NJLAD. Plaintiff alleges that she engaged in protected activity under Title VII by "becoming pregnant and carrying a child in her womb." (SAC ¶90.) Being pregnant, however, is not a protected activity for purposes of showing a retaliation claim under Title VII or NJLAD. *See Philips v. Starbucks Corp.*, 624 F. Supp. 530, 546 (D.N.J. 2022) ("Title VII's retaliation provisions protect employees who participate in [either] Title VII's statutory process or who otherwise oppose employment practices made illegal by Title VII.") (internal quotations omitted); *LeBlanc v. Hill Sch.*, Civ. No. 14–1674, 2015 WL 144135, at *14–15 (E.D. Pa. Jan. 12, 2015) (finding a protected activity under Title VII where the plaintiff complained of sex and age discrimination both in writing and in person); *Rios*, 463 A.3d at 426 (explaining that NJLAD prohibits retaliation because an employee "filed a complaint" or "has opposed any practices or acts forbidden under the LAD") (internal quotations omitted).

Thus, the Court will grant the portion of the Motion seeking to dismiss Plaintiff's Title VII and NJLAD retaliation claims (Counts III and V) against Distek. These claims will be dismissed without prejudice.

        iii.      <u>Aiding and Abetting under NJLAD (Count VI)</u>

Finally, as set forth above, Plaintiff alleges in Count VI that Individual Defendants aided and abetted Distek and Actalent in their discriminatory termination of Plaintiff. (SAC ¶¶119–125.) Individual Defendants argue that Plaintiff's aiding and abetting claim against them must be dismissed. (Distek Moving Br. at 15.) First, as to Defendant Vrabel, they argue that Plaintiff did not identify him as her supervisor in the SAC. (*Id.*) As to Defendant Rayner, they argue that Plaintiff does not allege what role Rayner played in the alleged discriminatory conduct aside from simply stating her position as Distek's Director of Human Resources. (*Id.*). Lastly, Individual Defendants argue that Plaintiff's claim against Defendant Burton fails because Plaintiff does not allege facts to show that Burton engaged in active and purposeful conduct. (*Id*. at 15–16.)

Under NJLAD, it is unlawful for "any person, whether an employer or an employee or not, to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this act." N.J. Stat. Ann. § 10:5-12(e). "Aiding and abetting amounts to a mechanism for imposing personal liability for a violation of the NJLAD." *Bradley v. Just Greens, LLC*, Civ. No. 19-7162, 2019 WL 4316773, at * 5 (D.N.J. Sept. 12, 2019) (citing *Cicchetti v. Morris Cty. Sheriff's Office*, 947 A.2d 626, 645 (N.J. 2008)).

To hold an employee liable as an aider or abettor of discrimination in violation of NJLAD, a plaintiff must ultimately show: "(1) the employer whom the defendant aided performed a wrongful act causing injury; (2) the defendant was generally aware of his role as part of an overall illegal or tortious activity at the time that he provided the assistance; and (3) the defendant knowingly and substantially assisted the principal violation." *DeSantis v. N.J. Transit*, 103 F. Supp. 3d 583, 591 (D.N.J. 2015) (citing *Cicchetti*, 947 A.2d at 645). Aiding and abetting requires "active and purposeful conduct." *Cicchetti*, 947 A.2d at 645. Under this standard, mere failures "to act so as to protect plaintiff" or failure to "effectively respond to [plaintiff's] complaints of

11

discrimination" "fall well short of the active and purposeful conduct that [the New Jersey Supreme Court] ha[s] held is required to constitute aiding and abetting for purposes of . . . individual liability." *Id.* at 646.

Here, Plaintiff has not plausibly alleged "active and purposeful conduct" to support the second or third elements of aiding and abetting liability against Individual Defendants. First, there are no allegations as to each defendant's role in the alleged discrimination, rather Plaintiff simply states that Individual Defendants "saw Plaintiff while she was working on the premises" and "witnessed Plaintiff's obvious pregnancy and were on actual notice thereof." (SAC ¶¶121–122.) Further, there are no allegations that the individual defendants themselves discriminated against Plaintiff, assisted in the alleged discrimination[9], or that they knew they had some role in the alleged discrimination. Plaintiff baldly claims that Individual Defendants "actively and purposely acted together to terminate Plaintiff because of her pregnancy." (*Id.* ¶123.) These allegations are merely conclusory and do not support an inference that Individual Defendants played any role in the alleged discriminatory decision to fire Plaintiff.

Accordingly, the Court finds that Plaintiff has not pled plausible claims for aiding and abetting against Individual Defendants. *See DeSantis*, 103 F. Supp. at 591 (finding that a complaint which alleged defendants' job titles and that defendants were aware of plaintiff's disabilities and witnessed his seizures constituted "threadbare assertions [that] do not make out even a minimally plausible claim that [defendants] aided and abetted any discrimination."

---

[9] The Court acknowledges that Defendant Albright is alleged to have been the person to inform Plaintiff that she was being terminated. (SAC ¶43.) Plaintiff does not, however, plead that Defendant Albright was involved in the decision to fire Plaintiff or had any other role besides being the messenger.

12

The Court will therefore GRANT the portion of Distek and Individual Defendants' Motion seeking to dismiss Count VI against Individual Defendants. This dismissal will be without prejudice.

### C.   CLAIMS AGAINST ACTALENT

The SAC also asserts Counts I–V against Actalent, the recruiting agency that connected Plaintiff with Distek for employment. Actalent argues that the Court should dismiss Plaintiff's claims against it because the SAC insufficiently pleads facts as to its knowledge of Plaintiff's pregnancy. (Actalent Moving Br. at 10–21).

The Court agrees. In fact, this is a significant symptom of the even larger general deficiency in the SAC: it frequently groups all the Defendants together and assigns conduct to no one defendant in particular. From what the Court can discern, the SAC does not plead notice as to Actalent regarding Plaintiff's pregnancy, nor any nexus between her pregnancy and her termination that implicates Actalent. The Court will therefore GRANT Actalent's Motion and dismiss all claims against it without prejudice (other than Count I, which will be dismissed with prejudice for the reasons set forth above), giving Plaintiff the chance to cure the deficiency should she seek to further amend her SAC.

### IV.   CONCLUSION

For the reasons stated above, the Court will **GRANT** Actalent's Motion to Dismiss, and **GRANT IN PART AND DENY IN PART** Distek and Individual Defendants' Motion to Dismiss. As to Actalent, Count I will be dismissed with prejudice, and Counts II–V will be dismissed without prejudice. As to Distek, Count I will be dismissed with prejudice, Counts III and V will be dismissed without prejudice, and Counts II and IV shall proceed. As to Individual Defendants, Count VI will be dismissed without prejudice. Plaintiff will be given leave to file a further

Amended Complaint to address the deficiencies identified in this Opinion within 30 days. An appropriate Order will follow.


Date: **January 24, 2025**

                                              s/ Zahid N. Quraishi
                                              **ZAHID N. QURAISHI**
                                              **UNITED STATES DISTRICT JUDGE**